| | |
|---|---|
| SAMUEL JONES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| TOWN OF SPRING LAKE, ) | |
| ) | |
| Defendant. ) | |

On October 30, 2018, Samuel Jones ("Jones" or "plaintiff") filed an amended complaint against the Town of Spring Lake ("Spring Lake" or "defendant") [D.E. 14]. Jones alleges that Spring Lake created a hostile work environment because of his military service in violation of the Uniformed Services Employment and Reemployment Rights Act of 1994, 38 U.S.C. § 4301 ("USERRA"), and that Spring Lake fired Jones both because of his political affiliation in violation of the First Amendment of the United States Constitution and because of his military service in violation of USERRA. See id. On January 16, 2020, Spring Lake moved for summary judgment [D.E. 30] and filed a memorandum, statement of material facts, and appendix in support [D.E. 31, 32, 33]. On February 6, 2020, Jones responded [D.E. 35]. On February 20, 2020, Spring Lake replied [D.E. 37]. As explained below, the court grants Spring Lake's motion for summary judgment.

I.

Spring Lake is a town incorporated in Cumberland County, North Carolina.[1] Spring Lake

---

[1] Under Local Civil Rule 56.1, a party opposing a motion for summary judgment shall submit "a separate statement including a response to each numbered paragraph in the moving party's statement [of material facts]." Local Civ. R. 56.1 (a)(2). "Each numbered paragraph in the moving party's statement of material facts will be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in the opposing statement." Id.

operates under the "Council-Manager" form of local government. See N.C. Gen. Stat. § 160A-101(9); Dobbins Aff. [D.E. 33-1] ¶ 6; Gerald Aff. [D.E. 33-2] ¶ 5; O'Garra Aff. [D.E. 33-3] ¶ 5; Sutherland Aff. [D.E. 33-4] ¶ 5; Jackson Aff. [D.E. 33-5] ¶ 5.[2] Under the Council-

---

"Each statement by the movant or opponent . . . must be followed by citation to evidence that would be admissible, as required by Federal Rule of Civil Procedure 56(c)." Local Civ. R. 56.1(a)(4). Under Federal Rule of Civil Procedure 56(c), a party disputing a material fact must support its position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Merely responding that a party "disputes" a material fact is insufficient under Rule 56 and Local Rule 56.1. See Howard v. Coll. of the Albermarle, 262 F. Supp. 3d 322, 329 n.1 (E.D.N.C.), aff'd, 697 F. App'x 257 (4th Cir. 2017) (per curiam) (unpublished).

Jones's response to Spring Lake's motion for summary judgement violates Local Rule 56.1 because Jones did not file a separate statement of material facts that responds to each paragraph in Spring Lake's statement of material facts. Cf. [D.E. 35]. Thus, to the extent that Jones does not oppose any statement of material fact by citing to particular parts of the record or showing that Spring Lake cannot support their position based on evidence in the record, the court deems the material fact admitted. See Horton v. Methodist Univ., Inc., No. 5:16-CV-945-D, 2019 WL 320572, at *1 n.1 (E.D.N.C. Jan. 23, 2019) (unpublished), aff'd, No. 19-1174, 2019 WL 6998899 (4th Cir. Dec. 20, 2019) (per curiam) (unpublished); Felton v. Moneysworth Linen Serv., Inc., 295 F. Supp. 3d 595, 597 n.1 (E.D.N.C. 2018); Howard, 262 F. Supp. 3d at 329 n.1. Nevertheless, the court considers all materials Jones filed with his response.

[2] Jones asserts that certain unidentified Spring Lake Board of Aldermen ("Board") "were not identified as individuals with discoverable information during the discovery phase," and argues that the court's reliance on this evidence prejudices Jones. [D.E. 35] 16–17; see Fed. R. Civ. P. 26(a). Spring Lake identifies the Board members as Fredericka Sutherland ("Sutherland") and Jackie Jackson ("Jackson"), and argues that Jones is not prejudiced by their affidavits because Jones included allegations against Sutherland and the Board in his discovery and his response. See [D.E. 37] 7 n.5; see Fed. R. Civ. P. 37(c)(1).

This court must determine if defendant's nondisclosure of these individuals during initial disclosures under Rule 26 is substantially justified or harmless under Rule 37(c)(1). See S. States Rack & Fixture, Inc. v. Sherwin Williams, Co., 318 F.3d 592, 596 (4th Cir. 2003). The court examines five factors: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclosure the evidence." Id. at 597.

Jones does not address any of the Southern States factors. Instead, Jones argues that Spring Lake did not comply with the rules, and that "to rely on" Sutherland's and Jackson's affidavits "is wholly prejudicial to [Jones's] right to a fair trial." [D.E. 35] 16–17.

2

Manager system of government, the Spring Lake mayor presides at Board meetings. See Dobbins Aff. ¶¶ 6–7; O'Garra Aff. ¶¶ 3, 5; Sutherland Aff. ¶¶ 3, 5; Jackson Aff. ¶¶ 3, 5. The Board has five aldermen, who are elected in non-partisan elections, and the Mayor. See Dobbins Aff. ¶ 7; O'Garra Aff. ¶ 3; Sutherland Aff. ¶ 3; Jackson Aff. ¶ 3. James O'Garra ("O'Garra"), Sutherland, and Jackson were Board aldermen at all times relevant to this action. See O'Garra Aff. ¶ 2; Sutherland Aff. ¶ 2; Jackson Aff. ¶ 2. O'Garra is a retired United States Army aviator. See O'Garra Aff. ¶ 2.

The Board is responsible for, inter alia, establishing policies concerning Spring Lake services. See Dobbins Aff. ¶ 7; O'Garra Aff. ¶ 3; Sutherland Aff. ¶ 3; Jackson Aff. ¶ 3. Board actions require a majority of voting alderman. The Mayor votes only when needed to break a tie vote. No individual Board member has independent authority to act for the Board. See Dobbins Aff. ¶ 8; O'Garra Aff. ¶ 4; Sutherland Aff. ¶ 4; Jackson Aff. ¶ 4.

Spring Lake is located near Fort Bragg. Many active-duty and retired military personnel and their families live in Spring Lake. Spring Lake also employs many veterans. See Dobbins Aff. ¶ 32; Gerald Aff. ¶ 20; O'Garra Aff. ¶ 12; Sutherland Aff. ¶ 21; Jackson Aff. ¶ 21. Moreover, Spring Lake often honors active and former military members. See Dobbins Aff. ¶ 32; Gerald Aff. ¶ 20; O'Garra Aff. ¶ 12; Sutherland Aff. ¶ 21; Jackson Aff. ¶ 21. For example, the Board discussed renaming a local post office after Spring Lake resident and retired United States Army veteran Howard Pate Junior. See Dobbins Aff. ¶ 33. Additionally, the Board appoints a Spring Lake Military and Veterans Affairs Advisory Committee. See id. On February 12, 2018, the Board adopted

---

Under Southern States. Sutherland and Jackson's testimony did not surprise Jones. On the contrary, Sutherland's actions and the Board's actions are central to Jones's claims. Moreover, Jones had the opportunity to respond to the affidavits because Spring Lake filed them with its motion for summary judgment. At this stage in the litigation, admitting the affidavits does not disrupt trial. Furthermore, the affidavits present evidence that largely duplicates evidence that Spring Lake already submitted. Spring Lake does not offer an explanation for its untimely submission. See S. States Rack & Fixture, 867 F.3d at 597. Nonetheless, the Southern States factors weigh in favor of Spring Lake, and the court exercises its discretion to admit Sutherland's and Jackson's affidavits

amendments that committee proposed requiring that committee members have military backgrounds. See id. at ¶ 34. Spring Lake also conducts ceremonies for Memorial Day and Veterans Day. See [D.E. 33-9] 7–8.

On August 8, 2016, Spring Lake hired Jones as the director of its Recreation and Parks Department (the "Department"). See Ex. G [D.E. 33-7]; Jones Dep. [D.E. 33-8] 12. The Spring Lake Town Manager manages all government affairs, and is the sole individual with authority to hire and terminate the employment of Spring Lake department heads, including the director of the Recreation and Parks Department. See Dobbins Aff. ¶¶ 6, 9–10; Gerald Aff. ¶¶ 3–5; O'Garra Aff. ¶¶ 6–7; Sutherland Aff. ¶¶ 6–7; Jackson Aff. ¶¶ 6–7. Daniel Gerald ("Gerald") served as Town Manager when Jones was hired and throughout Jones's employment. See Gerald Aff. ¶¶ 12.

Jones is a former military service member. See Jones Dep. at 3–4. As director of the Department, Jones was responsible for the multipurpose community center (the "community center"), park facilities, budgeting, and "inter-local agreements." See Dobbins Aff. ¶ 12; Gerald Aff. ¶ 12; O'Garra Aff. ¶ 9; Sutherland Aff. ¶ 9; Jackson Aff. ¶ 9. Additionally, Jones created and implemented policies, procedures, and operating standards concerning the Department, managed the Department's publicity, managed the Department's contractual obligations and budget, planned and coordinated the Department's programs, and developed the Department's "master plan." See Ex. I [D.E. 33-9] 6–7. Jones also attended and participated in Board meetings. For example, Jones recommended a person for appointment to the Recreation Advisory Committee. See Dobbins Aff. ¶ 12; Gerald Aff. ¶ 12; O'Garra Aff. ¶ 9; Sutherland Aff. ¶ 9; Jackson Aff. ¶ 9. Jones's actions as director of the Department affected how Spring Lake citizens viewed the Mayor. See Dobbins Aff. ¶ 12; Gerald Aff. ¶ 12; O'Garra Aff. ¶ 9; Sutherland Aff. ¶ 9; Jackson Aff. ¶ 9. Moreover, the Department director interacts with Spring Lake citizens more than other city department directors. See Rey Dep. [D.E. 33-10] 9.

When Jones began work as the Department director, Chris Rey ("Rey") was the Spring Lake

4

Mayor. See Dobbins Aff. ¶ 3; O'Garra Aff. ¶ 13. In 2017, Rey did not run for reelection as mayor. See Dobbins Aff. ¶ 3; O'Garra Aff. ¶ 13. Following Rey's announcement that he would not seek reelection, Larry Dobbins ("Dobbins"), Chas Sampson ("Sampson"), and Terra Deloatch decided to run for Spring Lake Mayor. See O'Garra Aff. ¶ 13. Jones could not vote in the 2017 Spring Lake Mayoral election because he was not a Spring Lake resident, and Jones states that it did not matter to him which candidate became Spring Lake Mayor. See Jones Dep. at 25–26; O'Garra Aff. ¶ 14. Dobbins, O'Garra, and Gerald did not know whether Jones supported a particular candidate or political party. See Dobbins Aff. ¶ 31; Gerald Aff. ¶ 19; O'Garra Aff. ¶ 14; Gerald Dep. [D.E. 33-12] 8. Jones states that some members of the Spring Lake community thought he supported Sampson for Spring Lake Mayor because Jones and Sampson had a friendly relationship, they shared a common fraternity, and O'Garra showed Jones (and others) damaging information concerning Sampson's ex-wife. See Jones Dep. at 26–28, 39. Additionally, Jones perceived Dobbins as hostile to military employees because Dobbins stated that "we don't need folks collecting two checks" when discussing Jones's choice to hire former military service members. See id. at 25.

In November 2017, Dobbins was elected Spring Lake Mayor and was sworn in on December 11, 2017. See Dobbins Aff. ¶¶ 2, 13. At the swearing-in ceremony, Dobbins asked everyone in attendance, including "those . . . who did not vote for" him, to stand as a "show of unity," demonstrating that "together we stand" and that he would "serve each of you to the best of [his] ability." Id. at ¶ 13. Dobbins made similar statements following his swearing in as Spring Lake Mayor, including one meeting that Jones attended. See id. at ¶ 14; Jones Dep. at 25–26. Additionally, Jones perceived that Dobbins did not want Jones to hire individuals with military backgrounds because Dobbins asked Jones if a recent hire was a former military member. See Jones Dep. at 25. Spring Lake employees did not direct Jones to refrain from hiring former military members. Cf. id. at 41. Dobbins states that he did not have a anti-military bias. See Dobbins Aff. ¶ 35.

5

On December 12, 2017, the Board held a meeting. See Dobbins Aff. ¶ 15; O'Garra Aff. ¶ 16; Sutherland Aff. ¶ 10; Jackson Aff. ¶ 10. Before the meeting, O'Garra made comments about "military guy[s]" to former Spring Lake Mayor Rey and told Rey that "[w]e'll never hire another military person again." Rey Dep. at 7, 15. At the meeting, the Board discussed Spring Lake's financial concerns, structuring the transition of the former Spring Lake Town Manager to the new Town Manager without an overlap in employment, and the costs of an inspector's contract. See Dobbins Aff. ¶ 15; O'Garra Aff. ¶ 16; Sutherland Aff. ¶ 10; Jackson Aff. ¶ 10. A Board member expressed concern that Spring Lake paid Jones and the assistant director of the Department $140,000 when both rarely worked and were rarely present. See Dobbins Aff. ¶ 15; O'Garra Aff. ¶ 16; Sutherland Aff. ¶ 10; Jackson Aff. ¶ 10. The Board then discussed several issues concerning operation of the Department. Specifically, the Board discussed the deteriorating quality of the community center, the decline in membership and attendance at the community center because of its hours of operation, that the community center was poorly staffed, that nonmembers were allowed to use the community center showers, that Spring Lake citizens were going to Fayetteville for services the Department should provide, and the Department's increase in expenditures and decrease in services. See Dobbins Aff. ¶¶ 16–22; O'Garra Aff. ¶¶ 17–23; Sutherland Aff. ¶¶ 11–17; Jackson Aff. ¶¶ 11–17.

By the December 12, 2017, Board meeting, O'Garra's and Jones's relationship had become strained. O'Garra operated a concession stand at the community center during youth sports events. See O'Garra Aff. ¶ 10. Jones knew that O'Garra operated the concession stand, and also knew that O'Garra stored the concession stand equipment in a community center closet. See id. At some point, Jones confronted O'Garra about his use of the community center closet. See id. In the confrontation, Jones stated that there was "no room in my storage room" for the concession stand. Id. (emphasis omitted). Jones also stated that O'Garra should give a percentage of profits from the concession stand to Spring Lake. See id. O'Garra thought Jones was personally asserting ownership

6

over Spring Lake property, and he did not like the way Jones treated him during the interaction. See id. After the confrontation, Jones changed the locks to the community center and made Spring Lake personnel return community center keys to him. See id. O'Garra then stopped running the concession stand. See id. After these events, O'Garra's personally disliked Jones, but not due to Jones's political or military associations. See id. at ¶ 11.

On February 26, 2018, Gerald terminated Jones's employment. See Gerald Aff. ¶ 13; [D.E. 33-14] (termination letter). Gerald was aware that, before the December 11, 2017 Board meeting, Spring Lake received complaints from Spring Lake citizens that Jones had a poor attitude with children and coaches, that he was more focused on his fraternity events than his work, and that the quality of the community center declined under Jones's leadership. See Dobbins Aff. ¶ 24; O'Garra Aff. ¶¶ 8–9. Gerald met with Jones to discuss issues concerning the Department, but did not believe Jones capable of changing what Gerald viewed as the Department's decline. See Gerald Aff. ¶¶ 10–11. Gerald also was aware of Spring Lake's financial concerns. Spring Lake had $400,000 budget deficit and was ineligible to receive state funding grants because Spring Lake was in arrears of $1.4 million to the State of North Carolina for water and sewer-related services. Gerald believed that Department expenditures were excessive, did not think Jones understood how to effectively run the Department, and did not think Jones understood how to attract Spring Lake children to Department events. See Gerald Aff. ¶¶ 10–12; Gerald Dep. at 4. Along with Jones, Gerald terminated the employment of the Department assistant director, the Spring Lake accounting supervisor, the Spring Lake senior maintenance tech, the Spring Lake public works supervisor, the Spring Lake human resources director, and a senior IT position. See Gerald Aff. ¶ 13. Gerald did not know the political affiliation of the terminated employees, and three of the seven terminated employees (including Jones) were former military members. See id.

Gerald decided to terminate Jones to help Spring Lake address its budget deficit and ineligibility for state grants, to reduce Department expenses, and to replace Jones with a more

7

experienced individual at a lower pay rate who would address the concerns with Jones's leadership of the Department that the Board and Spring Lake citizens expressed to Gerald. See Gerald Aff. ¶¶ 8–13. One Board member, Sutherland, did ask Gerald to terminate Jones's employment, and the Board discussed terminating Jones's employment at the December 11, 2017 Board meeting, but Gerald stated that Sutherland's request did not affect his decision to fire Jones, and that Sutherland did not have a preference concerning hiring former military service members. See Gerald Dep. at 5. Gerald drafted a performance improvement plan concerning Jones, but did not give Jones the plan before terminating Jones's employment. See [D.E. 35-6] 3. Gerald complied with Spring Lake policies when terminating Jones's employment. See Dobbins Aff. ¶¶ 26–27; Gerald Aff. ¶ 14; [D.E. 33-15] (Spring Lake at-will employment termination policy). As Spring Lake policy required, Gerald told Dobbins that he planned to terminate Jones's employment, and Dobbins agreed with Gerald's decision. See Dobbins Aff. ¶ 26; Gerald Aff. ¶ 14. Dobbins did not have the authority to terminate Jones's employment, and Dobbins did not pressure the Gerald to terminate Jones's employment. See Dobbins Aff. ¶ 30. Gerald made the decision to terminate Jones's employment on his own, and was not pressured or directed to terminate Jones's employment by Spring Lake Board members or employees. See id. at ¶¶ 26, 30; Gerald Aff. ¶ 17; O'Garra Aff. ¶¶ 26, 29; Sutherland Aff. ¶¶ 19, 23; Jackson Aff. ¶¶ 19, 23.

Gerald hired Jay Graves ("Graves") to replace Jones as director of the Department. See Dobbins Aff. ¶ 19; Gerald Aff. ¶ 18; O'Garra Aff. ¶ 28; Sutherland Aff. ¶ 22; Jackson Aff. ¶ 22. Graves has a degree in parks and recreation, relevant experience, and is familiar with the state grant process. See Dobbins Aff. ¶ 19; Gerald Aff. ¶ 18; O'Garra Aff. ¶ 28; Sutherland Aff. ¶ 22; Jackson Aff. ¶ 22. Spring Lake pays Graves $10,000 less than it paid Jones. See Dobbins Aff. ¶ 19; Gerald Aff. ¶ 18; O'Garra Aff. ¶ 28; Sutherland Aff. ¶ 22; Jackson Aff. ¶ 21. Under Graves's leadership, the number of participants in Spring Lake sports programs doubled, and participation in Recreation and Parks department activities generally increased. See Dobbins Aff. ¶ 19; Gerald Aff. ¶ 18;

8

O'Garra Aff. ¶ 28; Sutherland Aff. ¶ 22; Jackson Aff. ¶ 21.

In his amended complaint, Jones alleges three claims: (1) Spring Lake's termination of his employment violates his right of political affiliation under the First Amendment; (2) Spring Lake's termination of his employment violates USERRA; and (3) Spring Lake created a hostile work environment because of his military service in violation of USERRA. See Am. Compl. [D.E. 14] 2–5.

## II.

Summary judgment is appropriate when, after reviewing the record as a whole, the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Scott v. Harris, 550 U.S. 372, 378 (2007); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986). The party seeking summary judgment must initially demonstrate the absence of a genuine issue of material fact or the absence of evidence to support the nonmoving party's case. See Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, see Anderson, 477 U.S. at 248–49, but "must come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis and quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. See Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. See Harris, 550 U.S. at 378.

A genuine issue of material fact exists if there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. See Anderson, 477 U.S. at 249. "The mere existence of a scintilla of evidence in support of plaintiff's position [is] insufficient . . . ." Id. at 252; see Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985) ("The nonmoving party, however, cannot

create a genuine issue of material fact through mere speculation or the building of one inference upon another."). Only factual disputes that affect the outcome under substantive law properly preclude summary judgment. See Anderson, 477 U.S. at 248.

A.

In relevant part, the First Amendment provides that "Congress shall make no law . . . abridging freedom of speech." U.S. Const. amend. I. Under the First Amendment "unconstitutional conditions" doctrine, the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected freedom of speech even if he has no entitlement to that benefit." Bd. of Comm'rs v. Umbehr, 518 U.S. 668, 674 (1996) (quotation and alteration omitted); see Perry v. Sindermann, 408 U.S. 593, 597 (1972). The Supreme Court applied this doctrine in Branti v. Finkel, 445 U.S. 507, 517 (1980), and Elrod v. Burns, 427 U.S. 347, 372–73 (1976) ("the Elrod-Branti doctrine"), and held that a government employee may not be fired "solely for the reason that they were not affiliated with a particular party or candidate." Knight v. Vernon, 214 F.3d 544, 548 (4th Cir. 2000) (quotation omitted); Jenkins v. Medford, 119 F.3d 1156, 1160 (4th Cir. 1997) (en banc). To prove a First Amendment claim under the Elrod-Branti doctrine, a plaintiff must demonstrate that his conduct was constitutionally protected, and that his protected conduct was a "substantial or motivating factor" in the government's decision to terminate a plaintiff's employment. Umbehr, 518 U.S. at 675. If a plaintiff meets his burden, the government may avoid liability by demonstrating that the plaintiff would have been fired "in the absence of the protected conduct." Id.; see Bland v. Roberts, 730 F.3d 368, 375 (4th Cir. 2013).

As for the first prong under the Elrod-Branti doctrine, Jones argues that his failure to affirmatively support Dobbins in the 2017 Spring Lake Mayoral race is protected activity. See [D.E. 35] 10–12; Knight, 214 F.3d at 547–48. Spring Lake responds that because Jones did not vote in the 2017 Mayoral election, did not have an express preference for the winning candidate, and did not overtly support Sampson, Jones did not engage in protected activity. See [D.E. 31] 7.

10

A government employee's decision not to support a candidate for political office is protected activity. See Branti, 445 U.S. at 509–10, 517; Elrod, 427 U.S. at 350–51; Knight, 214 F.3d at 547–48. Accordingly, Jones satisfies the first prong under the Elrod-Branti doctrine.

As for the second prong under the Elrod-Branti doctrine, Jones argues that O'Garra's comments concerning Jones's alleged support for Sampson in the Spring Lake Mayoral race, O'Garra showing a group including Jones negative social media posts of Sampson's ex-wife, and Dobbins's comments at the swearing in ceremony concerning "those who did not vote for Dobbins" demonstrate that Jones's perceived political affiliation was a motivating factor behind Spring Lake's decision to terminate his employment. See [D.E. 35] 10–12.

Even viewing the evidence in a light most favorable to Jones, no rational jury could find that Jones's protected activity was a substantial or motivating factor in Spring Lake's decision to terminate his employment. Initially, O'Garra and Dobbins did not decide to terminate Jones. Gerald did, free from the influence of O'Garra, Dobbins, or any other Spring Lake employee. See Dobbins Aff. ¶¶ 26, 30; Gerald Aff. ¶ 17; O'Garra Aff. ¶¶ 26, 29; Sutherland Aff. ¶¶ 19, 23; Jackson Aff. ¶¶ 19, 23. O'Garra attributes the perception that he disliked Jones to a strained working relationship, not O'Garra's perception of Jones's political affiliation. See O'Garra Aff. ¶ 11. Jones does not contradict this evidence. O'Garra and Dobbins also testified that they did not know Jones's political affiliations. See id. at ¶ 13; Dobbins Aff. ¶ 31. Jones does not contradict this evidence. Moreover, Gerald testified that he was not pressured into terminating Jones's employment, despite Board members expressing a desire to fire Jones. See Gerald Dep. at 5. Jones does not contradict this evidence. Dobbins testified that he made statements concerning "those . . . who did not vote" for him to demonstrate unity and that he would serve each Spring Lake citizen. See Dobbins Aff. ¶ 13. Jones does not contradict this evidence. Gerald testified that he based his decision to terminate Jones's employment on community complaints concerning Jones, issues concerning the Recreation and Parks department, and Spring Lake's financial issues. See Gerald Aff. ¶¶ 8–13. Again, Jones

11

does not contradict this evidence. Instead, Jones invites the court to speculate that his employment was terminated because of his political views even though Jones admits that he was not involved in the 2017 Mayoral election, did not vote, and did not care who won. The court declines the invitation to speculate. See Bland, 730 F.3d at 383–84; Gonzalez-De-Blasini v. Family Dep't, 377 F.3d 81, 85–86 (1st Cir. 2004); Rivera-Cotto v. Rivera, 38 F.3d 611, 613–14 (1st Cir. 1994); Liotta v. Borough of Springdale, 985 F.2d 119, 121–22 (3d Cir. 1993); Garrett v. Barnes, 961 F.2d 629, 632–34 (7th Cir. 1992); Penley v. McDowell Cty. Bd. of Educ., No. 1:14-cv-00170-MOC-DLH, 2016 WL 4435695, at *4–6 (W.D.N.C. Aug. 19, 2016) (unpublished); Skrundz v. Pabey, No. 2:05–CV–188 JVB, 2009 WL 1704687, at *3 (N.D. Ind. June 17, 2009) (unpublished); Rodriguez-Santana v. Commonwealth, No. 06–1490 (SEC), 2009 WL 1140270, at *3–4 (D.P.R. Apr. 24, 2009) (unpublished); cf. Sales v. Grant, 158 F.3d 768, 775–80 (4th Cir. 1998). Accordingly, Jones fails to demonstrate a prima facie case under Elrod-Branti, and the court grants summary judgment in favor of Spring Lake concerning Jones's First Amendment claim.

Alternatively, Spring Lake has demonstrated that it would have terminated Jones's employment absent his protected activity. Specifically, Gerald believed that, inter alia, Department expenditures were excessive, that Jones did not understand how to effectively run the Department, and that Jones did not understand how to attract Spring Lake children to Department events. See Gerald Aff. ¶¶ 10–12; Gerald Dep. at 4. Moreover, Gerald terminated the employment of several other Spring Lake employees, and did not know the political affiliation of any of them. See Gerald Aff. ¶ 13. Spring Lake's reasons for terminating Jones's employment are unconnected to Jones's participation (or lack thereof) in the 2017 Spring Lake mayoral race. Accordingly, Spring Lake has demonstrated that it would have fired Jones even absent his protected activities. See Umbehr, 518 U.S. at 675; Roberts, 730 F.3d at 375.

In opposition, Jones asserts that Spring Lake's explanation for terminating his employment is "simply pretext and the real reason and/or motivating factor is due to his failure to support Mayor

12

Dobbins [sic] campaign." [D.E. 35] 12. However, even viewing the evidence in a light most favorable to Jones, no rational jury could find that Spring Lake's reason is pretextual and that the real reason is Jones's failure to support Dobbins's campaign. See Matsushita, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." (footnote omitted)); see also Umbehr, 518 U.S. at 675. Accordingly, the court grants summary judgment to Spring Lake concerning Jones's First Amendment claim.

B.

Under USERRA, an individual "who . . . has performed . . . service in a uniformed service shall not be denied . . . retention in employment . . . by an employer on the basis of that . . . performance of service." 38 U.S.C. § 4311(a). An employer "shall be considered to have engaged in actions prohibited" under section 4311(a) "if the person's . . . service . . . in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such . . . service." Id. § 4311(c); see Hill v. Michelin N. Am., 252 F.3d 307, 312 (4th Cir. 2001). An employer may be liable under section 4311(c) even if the de facto decisionmaker's act to terminate a plaintiff's employment is not motivated by anti-military animus. See Staub v. Proctor Hosp., 562 U.S. 411, 419 (2011). Accordingly, "if a supervisor performs an act motivated by anti[-]military animus that is intended by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA." Id. at 422 (emphasis omitted). In this context, intent "denotes that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." Id. at 422 n.3 (quotation and alteration omitted).

A plaintiff has the burden to demonstrate that his military service was a motivating factor in his termination. If a plaintiff meets his burden, the burden then shifts to the employer to show that it would have terminated the plaintiff in the absence of his military service. See Hill, 252 F.3d at

13

312, 314–15; Worden v. SunTrust Banks, Inc., 549 F.3d 334, 342 (4th Cir. 2008); Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 305–06 (4th Cir. 2006).

Jones argues each of the following acts demonstrate anti-military animus: (1) the Board, and O'Garra in particular, interfered in Spring Lake personnel matters; (2) Sutherland told Gerald to fire Jones; (3) O'Garra's, Dobbins's, and Sutherland's statements, and O'Garra's actions concerning Jones, demonstrate that the Board was biased against hiring individuals with military backgrounds; (4) Gerald did not provide Jones with a performance review or warning before terminating his employment; (5) Spring Lake did not document Jones's poor work performance, and that two former Spring Lake employees' statements demonstrate Jones's effectiveness as director. See [D.E. 35] 12–20.

As for Jones's arguments concerning the Board's actions concerning personnel matters, even viewed in a light most favorable to Jones, no rational jury could find that the actions reflect anti-military animus. First, O'Garra did not have the power as an individual Board alderman to effect Spring Lake policy. See Dobbins Aff. ¶ 8; O'Garra Aff. ¶ 4; Sutherland Aff. ¶ 4; Jackson Aff. ¶ 4. Moreover, Gerald, not the Board, made all decisions concerning hiring or terminating the employment of Spring Lake employees. See Dobbins Aff. ¶¶ 6, 9–10; Gerald Aff. ¶¶ 3–5; O'Garra Aff. ¶¶ 6–7; Sutherland Aff. ¶¶ 6–7; Jackson Aff. ¶¶ 6–7. Furthermore, Gerald's decisions were not influenced by Board aldermen or Board actions. See Dobbins Aff. ¶¶ 26, 30; Gerald Aff. ¶ 17; O'Garra Aff. ¶¶ 26, 29; Sutherland Aff. ¶¶ 19, 23; Jackson Aff. ¶¶ 19, 23. Jones does not dispute this evidence, and Jones fails to produce evidence tending to show that any Board action concerning personnel matters was motivated by anti-military animus, or that the actions he identifies were intended to cause the termination of his employment. See Staub, 562 U.S. at 422.

As for Jones's argument concerning Sutherland's statement to Gerald, anti-military animus did not animate Sutherland's statement. On the contrary, Sutherland wanted her friend's brother to serve as Department director. See Gerald Dep. at 5. Gerald also testified that Sutherland "never"

14

expressed a preference not to hire former military service members. Id. Moreover, Sutherland voted to hire former military service members. See Sutherland Aff. ¶ 21. Jones does not dispute this evidence or identify other evidence that tends to show, even viewed in a light most favorable to Jones, anti-military animus motivated Sutherland's comment. See Staub, 562 U.S. at 422.

As for O'Garra's, Dobbins's, and Sutherland's statements, the statements are "stray remarks" because each statement is an isolated incident unrelated to Gerald's decision to terminate Jones's employment. See Velasquez-Garcia v. Horizon Lines of P.R., Inc., 473 F.3d 11, 18 (1st Cir. 2007); cf. Rayyan v. Va. Dep't of Transp., 719 F. App'x 198, 202 (4th Cir. 2018) (per curiam) (unpublished); Hill, 252 F.3d at 314; Sheehan v. Dep't of Navy, 240 F.3d 1009, 1014 (4th Cir. 2001); O'Connor v. Consol. Coin Caterers Corp., 56 F.3d 542, 548–49 (4th Cir. 1995), rev'd on other grounds, 517 U.S. 308 (1996); Birbeck v. Marvel Lighting Corp., 30 F.3d 507, 511–12 (4th Cir. 1994). Moreover, Jones does not provide other evidence demonstrating that Spring Lake employees created an atmosphere of discrimination against former military members. See Velasquez-Garcia, 473 F.3d at 18. Accordingly, O'Garra's, Dobbins's, and Sutherland's statements do not demonstrate anti-military animus. See Rebello v. City of New Bedford, No. 12-10248-GAO, 2013 WL 6018824, at *2 (D. Mass. Nov. 13, 2013) (unpublished); Rademacher v. HBE Corp., No. 4:08CV1193 HEA, 2010 WL 1329741, at *8 (E.D. Mo. Apr. 5, 2010) (unpublished), aff'd, 645 F.3d 1005 (8th Cir. 2011); Tranter v. Crescent Twp., 625 F. Supp. 2d 298, 303-04 (W.D. Pa. 2007); Gannon v. Nat'l R.R. Passenger Corp., 422 F. Supp. 2d 504, 508 (E.D. Pa. 2006). As for O'Garra's relationship with Jones, Jones does not dispute that his actions to remove O'Garra's concession stand from the community center created their poor working relationship. See O'Garra Aff. ¶ 11. Instead, Jones points to O'Garra's statements and asks the court to infer that those statements, coupled with O'Garra's attitude toward Jones, demonstrates O'Garra's anti-military animus. See [D.E. 35] 19. As discussed, those statements are merely stray remarks, and Jones presents no admissible evidence

15

suggesting that O'Garra's statements created an atmosphere of discrimination. See Velasquez-Garcia, 473 F.3d at 18.

As for Jones's arguments concerning Gerald's decision not to warn Jones or provide him a performance review before terminating his employment, Gerald testified that he did not deliver the performance plan to Jones because he believed that the plan would not change Jones's performance as Director. See Gerald Aff. ¶ 15. Jones does not dispute this assertion with admissible evidence. Moreover, Gerald met with Jones to discuss the Department's difficulty in attracting and retaining Spring Lake children to Department programs. See id. at ¶ 11. Jones does not dispute this assertion. Furthermore, Gerald explained in detail his reasons for terminating Jones's employment, and testified that he was not influenced by Spring Lake employees or Board aldermen. See Francis, 452 F.3d at 308; Felty v. Graves–Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Again, Jones does not dispute this assertion. Gerald also terminated the employment of several Spring Lake employees along with Jones, some of whom were former military service members, some of whom were not. See Gerald Aff. ¶ 13. Moreover, Gerald replaced Jones with an individual who has relevant experience, has a degree in parks and recreation, and at a lower rate of pay. See id. at ¶ 18. Accordingly, no rational jury could find that Gerald's decision not to warn Jones or deliver the performance plan to Jones bespeaks anti-military animus. See Staub, 562 U.S. at 422.

As for Jones's arguments concerning the lack of documentation of Jones's poor performance, Jones admits that Spring Lake did not issue written performance evaluations to him while he was employed. See Jones Dep. at 18. And, Jones presents no evidence that Spring Lake's decision not to document Jones's poor performance suggests that Spring Lake was motivated by anti-military evidence. See Staub, 562 U.S. at 422. Rather, Jones argues that Tad Davis's and Bill Zell's statements demonstrate his effectiveness as Recreation and Parks director before Dobbins was elected Spring Lake Mayor, and implies that Spring Lake's argument concerning his poor performance is pretext for anti-military animus. See [D.E. 35] 16–17; [D.E. 35-5] (Davis statement);

16

[D.E. 35-10] (Zell statement). Even viewed in a light most favorable to Jones, neither statement refutes Gerald's stated reasons for terminating Jones's employment. See Gerald Aff. ¶¶ 8–17. Moreover, Jones's reliance on Moss v. City of Abbeville, 740 F. Supp. 2d 738, 746 (D.S.C. 2010), is misplaced. The court in Moss discounted an employer's claim concerning an employee's poor performance because the employer had little evidence of the employee's poor performance, the close proximity between the employee's protected activity and the termination of his employment, and the abundance of evidence the employee produced in support of his "favorable" work history. See Moss, 740 F. Supp. 2d at 745–46. Not so here. Rather, even viewed in a light most favorable to Jones, the letters do not refute Gerald's stated reasons for terminating Jones's employment. As a result, Jones cannot demonstrate that Spring Lake's reasons for terminating his employment were pretextual. See Hill, 252 F.3d at 312, 314–15; Worden, 549 F.3d at 342; Francis, 452 F.3d at 305–06. Accordingly, Jones fails to demonstrate that the acts of Spring Lake personnel were motivated by anti-military animus, and the court grants summary judgment to Spring Lake concerning Jones's USERRA wrongful termination claim.

Alternatively, even if Jones could show that the above acts demonstrate Spring Lake employees were motivated by anti-military animus (which he cannot), Jones does not produce any evidence demonstrating that these acts proximately caused Gerald's decision to terminate Jones's employment. Rather, the record evidence demonstrates that Gerald made all employment decisions free from influence or direction from the Board, Board alderman, or other Spring Lake employees, and that Gerald terminated Jones's employment independent of any Spring Lake employee. See Dobbins Aff. ¶¶ 26, 30; Gerald Aff. ¶ 17; O'Garra Aff. ¶¶ 26, 29; Sutherland Aff. ¶¶ 19, 23; Jackson Aff. ¶¶ 19, 23. Specifically, Gerald testified that the decision was "entirely [his] own," and he was not "forced, directed, pressured, influence, induced, or otherwise encouraged to terminate Jones'[s] employment by anyone." Gerald Aff. ¶ 17. Jones does not present any admissible evidence to refute Gerald's testimony. Accordingly, Jones cannot demonstrate that any action of which he complains

17

proximately caused Gerald to terminate his employment. Staub, 562 U.S. at 422. Thus, the court grants summary judgment to Spring Lake concerning Jones's USERRA wrongful termination claim.

C.

Jones also argues that comments from the Board and Dobbins concerning military service members created a hostile work environment for Jones in violation of USERRA. See [D.E. 35] 17–18. The Fourth Circuit has not addressed whether USERRA contemplates a hostile work environment claim. The Fifth Circuit has held that it does not. See Carder v. Continental Airlines, Inc., 636 F.3d 172, 182 (5th Cir. 2011). Several other circuit courts have assumed without deciding that it does. See, e.g., Hackett v. City of South Bend, 954 F.3d 504, 508–09 (7th Cir. 2020); Spann v. City of Los Angeles, 677 F. App'x 397, 398 (9th Cir. 2017) (unpublished); Vega-Colon v. Wyeth Pharmaceuticals, 625 F.3d 22, 32 & n.9 (1st Cir. 2010). This court assumes without deciding that Jones may assert a hostile work environment claim under USERRA.

Courts analyzing USERRA hostile work environment claims apply Title VII standards. See, e.g., Mock v. City of Rome, 851 F. Supp. 2d 428, 434 (N.D.N.Y. 2012). Under Title VII, to determine whether alleged harassment was sufficiently severe or pervasive to alter the employee's terms and conditions of employment and to create an abusive working environment, the court examines the allegations both subjectively and objectively. See, e.g., Harris v. Forklift Sys., Inc., 510 U.S. 17, 21–22 (1993). First, the employee must subjectively consider the harassment to be sufficiently severe or pervasive as to alter his conditions of employment. See, e.g., Clark Cty. Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001); Faragher v. City of Boca Raton, 524 U.S. 775, 787–88 (1998); Boyer-Liberto v. Fontainebleau Corp., 786 F.3d 264, 277 (4th Cir. 2015) (en banc). Second, a court views the conduct from the perspective of a reasonable person in the employee's position to determine whether it is objectively severe or pervasive. See, e.g., Breeden, 532 U.S. at 271; Faragher, 524 U.S. at 787–88; Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 81–82 (1998); Boyer-Liberto, 786 F.3d at 277.

18

Essentially, Jones argues that the Board members's and Dobbins's comments concerning military service members "cause[d] [Jones] to lose his job," which ipso facto demonstrates a hostile work environment. [D.E. 35] 17–18. The court rejects the premise. As discussed, the comments at issue did not cause or motivate the termination of Jones's employment. Moreover, "isolated personnel decisions" cannot form the basis of a hostile work environment claim. Pueschel v. Peters, 577 F.3d 558, 566 (4th Cir. 2009). Alternatively, and in any event, O'Garra's and Dobbin's comments were not objectively severe or pervasive. Cf. Gentry v. East West Partners Club Mgt. Co., 816 F.3d 228, 234–36 (4th Cir. 2016). The comments at issue are, at most, "mere offensive utterance[s]" insufficient to support a hostile work environment claim. Harris, 510 U.S. at 23; see Breeden, 532 U.S. at 270–71; Faragher, 524 U.S. at 788; see also Baqir v. Principi, 434 F.3d 733, 746–47 (4th Cir. 2006). Thus, the court rejects Jones's arguments, and grants summary judgment to Spring Lake concerning his hostile work environment claim.

III.

In sum, the court GRANTS the defendant's motion for summary judgment [D.E. 30]. Defendant may file a motion for costs in accordance with the Federal Rules of Civil Procedure and this court's local rules. The clerk shall close the case.

SO ORDERED. This 10 day of August 2020.

JAMES C. DEVER III
United States District Judge